UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>CHAD LOSETH, VALKYRIE CONSTRUCTION, LLC, DAVE SWANSON, and COLLEEN SWANSON,<br><br>Defendants. | 5:23-CV-05059-CCT<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DECLARATORY JUDGMENT** |

Plaintiff, State Farm Fire and Casualty Company (State Farm), moves for summary judgment, seeking a declaration that it has no duty to defend or indemnify Valkyrie Construction, LLC (the LLC) or anyone else in and from the lawsuit entitled *Swanson v. Valkyrie Construction, LLC* (the Underlying Action), filed in state court at Custer County Circuit Court File No. 16CIV23-000011. Docket 25. The defendants oppose the motion. Dockets 29, 32.

## BACKGROUND

Many facts are undisputed; however, where there are disputes, the Court states the facts and reasonable inferences therefrom in a light most favorable to the defendants, the nonmoving parties. *See Use and Benefit of J & N Seeding, LLC v. Morris, Inc.*, 3:22-CV-03009-RAL, 2024 WL 4043649, *3 (D.S.D. Sept. 4, 2024) (providing that "[c]ourts ruling on a summary judgment motion

1

view the facts and inferences fairly drawn from the facts in the nonmoving party's favor" (citation omitted)). Chad and Anita Loseth had an ongoing business relationship, spanning approximately 17 years, with State Farm for personal and business insurance. Docket 31-2 at 8.[1] Relevant to this case, the Loseths contacted State Farm in approximately September 2017 to obtain insurance coverage for Chad because he was working as a subcontractor for a general contractor. Docket 31-1 at 28. State Farm issued Chad a policy (the Policy) on or about September 11, 2017. Docket 1 ¶ 13. The Policy's declaration page listed Chad Loseth as the named insured. *Id.* ¶ 13, 17.

While Chad was working as a subcontractor, he also registered the assumed business name under which he was operating—Valkyrie Construction. Docket 31-1 at 17. The registration document was signed and recorded on September 14, 2017. *Id.* at 19. According to the Loseths, State Farm was informed at the time they procured the Policy that Chad intended to work under an assumed business name. *Id.* at 37.

Chad worked as a subcontractor after being issued the Policy by State Farm, but at some point thereafter, he decided he wanted to work as a general contractor. *Id.* at 24. According to Chad, the State required him to form a limited liability company to work as a general contractor. *Id.* Therefore, on September 14, 2018, the Loseths formed Valkyrie Construction, LLC. Docket 28-2 (the LLC's articles of incorporation); Docket 31-1 at 16. Chad also testified

---

[1] Citations to depositions in the record are to the deposition page, not the docket document page.

that he formed the LLC in part because he wanted to protect his personal assets. Docket 36-9 at 55.

After forming the LLC, Chad and Anita discussed the need to update their insurance with State Farm and "make sure [they] were still good for [their] coverage." Docket 31-1 at 27–28. Anita, with Chad present, called Steve Engelbrecht, their State Farm agent, and set up a meeting. Docket 31-1 at 27. Neither Chad nor Anita could recall the date of the meeting; however, Chad testified that the meeting took place within a couple days after the Loseths formed the LLC and only Anita attended. Docket 36-9 at 26. Anita could not remember with certainty whether she provided Engelbrecht with the LLC's incorporation documents during this meeting. Docket 31-2 at 8. She did remember, however, that she told Engelbrecht they had formed the LLC and needed insurance for it. *Id.* at 9, 12, 14–15. She testified that when she left the meeting, she trusted Engelbrecht "to make sure that things were legally the way that they were supposed to be." *Id.* at 11.

While Chad did not attend the meeting, he testified that Anita told him "that she notified [Engelbrecht] at that time that we had formed the LLC. That's basically - - that's basically the conversation as I remember it." Docket 31-1 at 27. He also testified that she told him "she had taken care of it and discussed it with [Engelbrecht] and notified him of the change." *Id.* at 28. Chad, like Anita, "trusted [Engelbrecht] to adjust the policy as needed" and "to take care of the situation for [him] as he did with all [their] other insurance policies." *Id.* at 31–32.

It is undisputed that the LLC performed work as a general contractor in South Dakota and Arizona. Docket 30 ¶ 14. Relevant here, the LLC contracted with Dave and Colleen Swanson to be the general contractor and provide various materials and services for construction projects at the Swansons' property. Docket 28-16 at 10. Dave testified that he asked the Loseths whether the LLC was licensed and insured. *Id.* at 17. The Loseths provided the Swansons with a copy of the declarations page for the Policy, which listed Chad as the named insured. *Id.* Dave testified that the Loseths told him "they were insured and Valkyrie Construction was one in the same under their insurance policy with them." *Id.* at 17–18. Chad does not dispute that he represented to the Swansons that the LLC was covered under the Policy. Docket 36-9 at 64–66.

The LLC began construction on the Swansons' property in March 2022. Docket 28-3 at 36; Docket 28-15 at 63. However, around mid-July 2022, the parties' relationship began to deteriorate, and ultimately, the relationship between the LLC and Swansons terminated. Docket 30 ¶¶ 25, 26. While the Loseths and Swansons "interpret the circumstances surrounding the termination differently[,]" on or near August 23, 2022, the LLC removed its tools and materials from the Swansons' property. *Id.* ¶¶ 26–27. For purposes of State Farm's motion for summary judgment, the LLC and Chad do not dispute that on the date the LLC removed its tools, the work the LLC "agreed to perform was either incomplete or had not been started yet[,]" and "various work

performed by [the] LLC was incorrect, defective, and/or not compliant with code requirement." *Id.* ¶¶ 28, 31.

On February 14, 2023, the Swansons filed the Underlying Action against the LLC, alleging breach of contract and construction defects/negligence. *Id.* ¶ 36; Docket 1-1. The Swansons claimed more than $278,000 in damages. Docket 30 ¶ 38. They have never claimed damages at less than $95,000. *Id.*

On March 28, 2023, the Loseths submitted a claim to State Farm under the Policy related to the Underlying Action, and on August 21, 2023, State Farm agreed to defend the LLC subject to a reservation of rights. Docket 28-14 at 1. In a letter, State Farm explained the reasons for its reservation of rights. *Id.* State Farm also advised the Loseths that it would be filing a declaratory judgment action to determine the applicable coverage issues. *Id.* at 8.

On September 5, 2023, while the Underlying Action was pending, State Farm filed this declaratory judgment action against the Chad Loseth, the LLC, and the Swansons pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201, requesting "a determination and declaration from this Court that [State Farm] has no continuing duty to defend and no duty to indemnify [the LLC] against the claims and allegations in the Underlying Action." Docket 1 ¶¶ 21, 42. Approximately a year later, State Farm filed the current motion for summary judgment requesting the same relief. Docket 25. Chad and the LLC oppose State Farm's motion, Docket 29, and the Swansons join in that opposition, Docket 32. For ease of reading the defendants will collectively be referred to as "the LLC."

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law." *NDN Collective v. Retsel Corp.*, 5:22-CV-5027, 2024 WL 3903975, *2 (D.S.D. Aug. 22, 2024) (citations omitted). "The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence sufficient to support an element of its case on which it bears the ultimate burden of proof." *Id.* (citation omitted). "Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must present facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *S. Black Hills Water Sys., Inc. v. Town of Hermosa*, 5:21-CV-05070-VLD, 2023 WL 4824956, at *4 (D.S.D. July 27, 2023) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); Fed. R. Civ. P. 56(e)). The Court will "review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Musolf v. J.C. Penney Co. Inc.*, 773 F.3d 916, 918 (8th Cir. 2014) (citation omitted).

**DISCUSSION**

State Farm contends that "[t]here are several independent and sufficient reasons why [it] owes no continuing duty to defend and no duty to indemnify

6

[the] LLC and is entitled to summary judgment in its favor." Docket 26 at 9.

Those reasons include: (1) the LLC is not a named insured under the Policy

and does not otherwise qualify as an insured; (2) the damages alleged by the

Swansons in the Underlying Action do not arise out of an "occurrence," are not

"property damage," and do not arise out of any of the enumerated offense for

"personal and advertising injury" as these quoted terms are defined in the

Policy; and (3) even if the alleged damages implicate certain coverage

provisions, multiple Policy exclusions nonetheless apply to bar coverage. *Id.* at

9–10. Although this Court has examined each reason advanced by State Farm

and the LLC's responses thereto, the Court will address only the question

whether the LLC qualifies as an insured under the Policy, as that issue is

dispositive.

Jurisdiction in this case is based on diversity of citizenship under 28

U.S.C. § 1332(a)(1) because State Farm is a corporation with its principal place

of business in Illinois, Docket 1 ¶ 2, and the LLC's principal place of business

is in Custer County, South Dakota, *Id.* ¶3; Docket 12 ¶ 5. "State law controls

the construction of insurance policies when a district court is exercising

diversity jurisdiction, and therefore, South Dakota law governs this insurance

coverage dispute." *Union Ins. Co. v. Klingenberg*, CIV 20-4028, 2021 WL

1102189, *2 (D.S.D. March 23, 2021) (citation omitted).

Under South Dakota law, it is well settled "that the duty to defend is

independent and far broader than the duty to indemnify judgments or

settlements." *Nationwide Agribusiness Ins. Co. v. Fitch*, 976 N.W.2d 783, 786

(S.D. 2022) (citation omitted). "An insurance company has a duty to defend 'if it is clear or arguably appears from the face of the pleadings in the action against the insured that the alleged claim, if true, falls within policy coverage.'" *Id.* (quoting *Hawkeye-Security Ins. Co. v. Clifford*, 366 N.W.2d 489, 491 (S.D. 1985)). "The burden rests with the insurer 'to show the claim clearly falls outside of the policy coverages' and that 'there is no duty to defend.'" *N. Star Mut. Ins. v. Korzan*, 873 N.W.2d 57, 61 (S.D. 2015) (quoting *De Smet Farm Mut. Ins. Co. of S.D. v. Gulbranson Dev. Co,* 779 N.W.2d 148, 155 (S.D. 2010)).

Applying the above law here, State Farm directs this Court to the language in the Policy defining who is an insured. That provision provides in relevant part:

### SECTION II – LIABILITY

### SECTION II – WHO IS AN INSURED

1. Except for liability arising out of the use of "non-used autos":

    a. If you are designated in the Declarations as:

    (1) *An individual, you and your spouse are insureds*, but only with respect to the conduct of a business, other than described in (2) through (5) below, of which you are the sole owner.

    (2) A partnership of joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

    (3) A limited liability company, you are an insured. Your "members" are also insureds, but only with respect to the conduct of your business. Your "managers" are insureds, but only with respect to their duties as your "managers".

(4) An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

(5) A trust, you are an insured. Any executor, administrator, trustee, beneficiary or custodian of your estate or living trust are also insureds, but only while acting within the scope of their duties as such.

Docket 26 at 11–12 (emphasis added) (quoting Docket 1-2 at 64).

The Policy defines "you" and "your" as "the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this Policy." *Id.* at 10 (quoting Docket 1-2 at 36). The declaration page issued to the Loseths identified "Chad Loseth" as the named insured and as an "Individual." Docket 1-2 at 2.

State Farm argues that because only Chad Loseth is identified as the named insured, the definition in subsection (1) is implicated, and thus, "the Policy does not provide coverage for the claims or damages alleged against Valkyrie Construction LLC." Docket 26 at 11–12. State Farm further asserts that because the declaration page identifies the named insured as an "Individual" and not a limited liability company, the LLC does not otherwise qualify as an insured under subsection (3). *Id.* at 12. Finally, according to State Farm, the fact Chad performed work on behalf of the LLC does not implicate any definition of an insured because the Policy provides that "[n]o person or organization is an Insured with respect to the conduct of any current or past

9

partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." *Id.* at 12 (quoting Docket 1-2 at 65).

In response, the LLC concedes that it is not a named insured under the Policy and that it does not otherwise qualify as an insured under any Policy provision. *See generally* Docket 29. However, the LLC argues that it is nevertheless entitled to coverage based on coverage by estoppel or that at the very least there are material issues of fact in dispute concerning whether coverage by estoppel applies. *Id.* at 2, 8. In particular, the LLC directs this Court to Chad's and Anita's deposition testimony wherein they related that State Farm, via Engelbrecht, "was specifically notified in 2018 that the Loseths had changed from operating under an assumed name ('DBA Valkyrie Construction') to operating as an LLC (Defendant, 'Valkyrie Construction, LLC')[,]" *Id.* at 4, and that they "trusted that their agent had done everything necessary to provide the coverage they sought, and for which they continued paying[,]" *Id.* at 7. The LLC further claims that during the 2018 meeting with Engelbrecht, Anita provided him the LLC documents and "specifically requested that the policy in question be 'updated' accordingly." *Id.* at 7.

State Farm argues that the LLC waived its estoppel defense because none of the defendants raised this defense in their respective answers. Docket 34 at 3. State Farm notes that under Federal Rule of Civil Procedure 8(c), estoppel is an affirmative defense that must be pled "[i]n response to a pleading[.]" Fed. R. Civ. P. 8(c). State Farm further quotes the general rule that the "failure to plead an affirmative defense results in waiver of that defense."

10

*Sherman v. Winco Fireworks, Inc.,* 532 F.3d 709, 715 (8th Cir. 2008) (citation

omitted). Because this Court is sitting under diversity jurisdiction, it will apply

federal law to the procedural question whether the estoppel defense is waived.

*Miller v. Honkamp Krueger Financial Servs., Inc.*, 9 F.4th 1011, 1016 (8th Cir.

2021) ("A federal court sitting in diversity applies state substantive and federal

procedural law." (citation omitted)).

     While State Farm is correct that the defendants did not specifically assert

estoppel as an affirmative defense in their answers, *see* Dockets 12, 13, the

failure to do so is not always fatal. As the Eighth Circuit explained,

"the Rule 8(c) pleading requirement is intended to give the opposing party both

notice of the affirmative defense and an opportunity to rebut it." *First Union*

*Nat'l Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 622 (8th Cir. 2007)

(citation omitted). Therefore, the court "eschewe[s] a literal interpretation of the

Rule that places form over substance[.]" *Id.* (citation omitted). Instead, "[w]hen

an affirmative defense is raised in the trial court in a manner that does not

result in unfair surprise, . . . technical failure to comply with Rule 8(c) is not

fatal." *Id.* (citation omitted). The party claiming waiver must show that

inclusion of the defense resulted in unfair surprise or is prejudicial. *Id.* at 623

(noting that the plaintiff has not shown unfair surprise or prejudice by

inclusion of defense).

     Here, State Farm has neither asserted unfair surprise nor prejudice by

the LLC raising its coverage by estoppel defense for the first time in its

response to State Farm's motion for summary judgment. Besides, it would be

incredulous for State Farm to claim that it was unfairly surprised or prejudiced. First, while none of the defendants used the phrase "coverage by estoppel" in their respective answers, the LLC's estoppel defense is based on specific factual assertions already known by State Farm through discovery. In particular, Chad and Anita testified in their depositions that even though the LLC was not identified as a named insured under the Policy, coverage should exist because they trusted Engelbrecht to update their Policy after Anita met with him in September 2018 and told him that they had formed the LLC. Second, all the facts related to this defense—at least as it pertains to the motion for summary judgment—are already in the record, and State Farm has had the opportunity to reply to the LLC's argument in its reply brief. The Court therefore construes the LLC's assertion of the coverage by estoppel defense in response to State Farm's motion for summary judgment as constructively amending its answer. *See Pictet*, 477 F.3d 623 (construing the assertion of the defense as a constructive amendment to the pleading).

State Farm further argues that even if the LLC did not waive its estoppel defense, summary judgment is nevertheless appropriate because "coverage by estoppel is not applicable in this case for numerous reasons." Docket 34 at 5. Though State Farm advances multiple arguments for why coverage by estoppel does not apply under the circumstances, this Court focuses particularly on State Farm's claim that the LLC failed to allege an essential element of its coverage by estoppel defense—namely, that Engelbrecht or State Farm made a

representation or assurance regarding coverage for the LLC under the Policy. *See id.* at 6–7.

The South Dakota Supreme Court long ago observed that in South Dakota "estoppel or waiver is available to bring within the coverage of an insurance policy risks not covered by its terms or expressly excluded therefrom." *State Auto. Cas. Underwriters v. Ruotsalainen*, 136 N.W.2d 884, 887 (S.D. 1965). Under this rule, as later explained by the court, an "insurer is estopped to deny coverage after a loss on a risk from a peril actually not covered by the terms of the policy" when the "insurer or its agent misrepresents, even though innocently, the coverage of an insurance contract, or the exclusions therefrom, to an insured before or at the inception of the contract, and the insured reasonably relies thereupon to his ultimate detriment[.]" *Roseth v. St. Paul Prop. & Liab. Ins. Co.*, 374 N.W.2d 105, 107 (S.D. 1985) (emphasis omitted) (quoting *Harr v. Allstate Insurance Co.*, 255 A.2d 208, 219 (N.J. 1969)). Coverage by estoppel must be established by clear and convincing evidence. *Ruotsalainen*, 136 N.W.2d at 887.

While Anita testified that she met with Engelbrecht in September 2018, before the inception of the renewed the Policy, and informed him that the Loseths had formed the LLC and "needed insurance for such[,]" Docket 31-2 at 15, the record does not contain any evidence that Engelbrecht represented to or assured Anita at the meeting (or at any time prior to the policy renewing) that the LLC would be a named insured or otherwise covered under the Policy. In fact, Anita did not testify that Engelbrecht made *any* representations to her.

13

Moreover, after the meeting, the Loseths continued to receive a declaration page that identified only Chad as the named insured and contained no reference to the LLC. Therefore, there is no conduct on behalf of State Farm that could give rise to the Loseths' belief that the LLC was insured under the Policy.

The South Dakota Supreme Court deemed similar evidence insufficient to allow a coverage by estoppel defense in *American Family Mutual Insurance Co. v. Elliot*, 523 N.W.2d 100 (S.D. 1994). In *Elliot*, after suit was brought against the insured for injuries a child sustained while the insured was babysitting the child in her home, American Family instituted a declaratory judgment action to determine whether the insured's activities were excluded under the policy. *Id.* at 101. American Family moved for summary judgment, arguing that the policy excludes coverage for the babysitting services the insured operated out of her home. *Id.* at 102. The circuit court denied the motion, concluding that fact issues existed concerning, among other matters, whether the insurance agent's conduct negated the policy exclusion. *Id.*

On appeal, the supreme court reversed, noting the following evidence:

> The Elliots obtained the policy in 1984 from American Family's agent, Al Roeder. Although Roeder testified that he usually tries to keep his customers informed as to whether their policy covers their activities, Roeder did not discuss coverage for Elliot's babysitting endeavors. Roeder admitted that he failed to discuss this matter with the Elliots despite the fact that the policy was specifically amended in 1987 to clarify child care services under the definition of "business" and despite the fact that Roeder did not believe that Marie's child care services were covered by the policy. Marie Elliot never read the policy prior to April 4, 1991.

14

*Id.* at 102. In the court's view, the evidence did not show "conduct on behalf of

American Family or the Elliots which could possibly give rise to a belief that the

American Family policy covered Elliot's babysitting service." *Id.* at 104. The

record also lacked "evidence that the American Family agent, Alvin Roeder,

made any representations to the Elliots that the babysitting service was

covered under the policy." *Id.* The court noted that "Elliot's argument, in

simplest terms," is a claim "that because [Mr. Elliot] purchased a homeowner's

policy which he barely read, and because he was not specifically told otherwise,

the babysitting service must have been covered by the policy." *Id.* Therefore,

the court held that "[u]nder these facts the remedy of estoppel is not available

to expand the terms of the policy." *Id.*

Relying on *Elliot*, the South Dakota Supreme Court also concluded in

*Rumpza v. Larsen*, that "the remedy of estoppel is not available to expand the

terms of the policy" because the insured did not allege that the insurer made

any representation regarding the coverage the insured now seeks to obtain.

551 N.W.2d 810, 816 (S.D. 1996). The coverage issue in *Rumpza* concerned a

vacant home and an endorsement in the policy that excluded coverage for a

loss that occurs while the premises has been vacant beyond thirty days. *Id.* at

811. Rumpza argued that Stockholm Farm Mutal Insurance Company "should

be equitably estopped from enforcing the vacancy provision" because Rumpza

"relied on the assertion of [his agent] Larsen that they had $50,000 coverage on

their property and that Larsen knew the property would be vacant." *Id.* at 815.

The supreme court disagreed, determining that "[w]hile Rumpza alleges that

15

Larsen [the representative] had information about potential vacancy and was

negligent, Rumpza does not allege that Larsen or Stockholm made any

representation that the home would be covered in the event of vacancy." *Id.*

Two additional cases—ones favorable to the insured—buttress the South

Dakota Supreme Court's view that there must be evidence of a representation

or assurance by the insurer to the insured to allow a coverage by estoppel

defense. *See Farmers Mut. Auto. Ins. Co. v. Bechard,* 122 N.W.2d 86 (S.D.

1963); *Ruotsalainen,* 136 N.W.2d 884. In *Bechard,* the court held that the

insurer was estopped from relying on its exclusionary clause to deny coverage

because the agent represented to the insured that he would be covered under

the policy while driving his gravel truck regardless of what kind of work he was

doing and further indicated in a letter that death and disability benefits apply

regardless of what the insured is driving. 122 N.W.2d at 91–92. Similarly, in

*Routsalainen,* the court upheld a circuit court's application of coverage by

estoppel because the insured asked for certain coverage; the agent "specifically

advise[d] and assure[d]" that the trailer "was fully covered" as requested; and

the insured "relied upon such representations so made[.]" 136 N.W.2d at 887–

88.

Here, the LLC, seemingly acknowledging the lack of evidence that

Engelbrecht made a representation regarding coverage, contends that coverage

by estoppel can apply even without a representation when an "insured relied

upon the agent's expertise and selection of the policy to [the insured's]

detriment, after having informed the agent of the coverage needed, and so long

as the insured had a reasonable belief that the policy covered the activities disclosed to the agent." Docket 29 at 6. The LLC directs this Court to *De Smet*, wherein the court said that "a failure to write the policy to include the specific coverage as ordered by the insured" can give rise to a claim of coverage by estoppel. 779 N.W.2d at 156.

In *De Smet*, the undisputed facts established that the insured, Gulbranson, showed the insurance agent, Croon, a copy of an insurance policy containing the type of coverage Gulbranson sought to obtain from Croon. *Id.* at 157. Croon thereafter selected the farm liability policy to issue to Gulbranson, which ended up not being of the type Gulbranson requested. *Id.* Coon selected the policy by relying "on an erroneous assumption, based entirely on his own prior experience with another customer[.]" *Id.* at 158. Neither the insurance company nor Croon clarified the matter. *Id.* Ultimately, the court upheld the circuit court's coverage by estoppel determination because "Gulbranson relied upon Croon's expertise and selection of the farm liability policy to his detriment" and "because of Croon's actions, Gulbranson had a reasonable belief that the De Smet policy covered [the] Company's business activities." *Id.*

In contrast, the LLC did not present any evidence that the Loseths requested that Engelbrecht procure specific coverage for the LLC. Rather, Anita testified that she told Englebrecht they "went to the LLC" and needed insurance. Docket 31-2 at 15. Further, even though Anita testified that she "trusted [their] insurance agent to make sure that things were legally the way they were supposed to be" after the September 2018 meeting, *Id.* at 7, her

17

reliance on her agent was not tethered to any action by Engelbrecht or to information provided to the Loseths by State Farm. Indeed, after the 2018 meeting, the Loseths continued to receive a new declaration page each year that identified—as it did prior to the 2018 meeting—only Chad Loseth as the named insured. Docket 31-2 at 14; Docket 36-9 at 30. And while Anita testified that she did not "did not know that [the Policy] needed to specifically say Valkyrie Construction[,]" and she and Chad believed the LLC and Chad were "one in the same[,]" Docket 31-2 at 14, 16, these beliefs, which were based on her assumptions, cannot give rise to a coverage by estoppel defense.

Because the record does not contain any evidence that Engelbrecht or State Farm represented to the Loseths that the LLC would be covered under the Policy or evidence that the Loseths had a reasonable basis to believe that the Policy covered the LLC's activities, the LLC has failed to identify a material issue of fact in dispute on the question whether coverage by estoppel applies. Further, because it is undisputed that the LLC was not a named insured and did not otherwise qualify as an insured under the Policy during the coverage period at issue, the Swansons' claims against the LLC clearly fall outside the Policy, and State Farm has no duty to defend or indemnify the LLC or anyone else in and from the Underlying Action.

Accordingly, it is hereby

ORDERED that State Farm's motion for summary judgment, Docket 25, is granted.

DATED March 6, 2025.

BY THE COURT:


/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE